[No. 13374.  In Bank.—October 1, 1889.]

STEPHEN FORD, PETITIONER, v. THE BOARD OF STATE HARBOR COMMISSIONERS OF THE STATE OF CALIFORNIA, RESPONDENT.

BOARD OF STATE HARBOR COMMISSIONERS — AUTHORITY TO REMOVE WHARF-INGERS AND COLLECTORS — CREATION OF OFFICE — CONSTITUTIONAL LAW. — Section 2521 of the Political Code, as amended in 1883, provides that the board of state harbor commissioners must appoint certain designated officers "and such number of wharfingers and collectors as they deem necessary. Such officers shall hold for a term of four years from the dates of their respective appointments, but may be removed by the board at any time, after due investigation, for causes affecting their official character or competency. The order for such removal, stating

distinctly the causes therefor, must be entered on their minutes. In case of a vacancy in such offices by the expiration of a term, or for any other cause, the board must fill the same by an appointment for four years." *Held,* by Fox, J., McFarland, J., and Sharpstein, J., that the board had authority under the statute to create the office of wharf-inger or collector, and consequently had power to abolish it at its pleasure, and thus indirectly to effect the discharge of the incumbent, and that from the date of the abolition of the office the incumbent so discharged had no further claim upon the board, either to accept his services or to render him compensation. *Held,* by Beatty, C. J., and Works, J., that the authority attempted to be conferred on the board to create the offices of wharfinger and collector was the delegation of a legislative power, and that the section to that extent was unconstitutional.

APPLICATION for a writ of mandate. The facts are stated in the opinion of Mr. Justice Fox.

*James G. Maguire,* for Petitioner.

*William W. Morrow,* and *T. C. Coogan,* for Respondent.

Fox, J.—This is an application for a writ of mandate to compel the defendant to allow and pay to plaintiff the sum of thirty dollars as and for the balance due him on account of his salary as collector for the month ending July 24, 1889.

The real purpose of the action is to determine the question of the power of the board of state harbor commissioners to discharge a collector before the expiration of his term of office, for no cause except that his services are no longer needed. The case is submitted upon an agreed statement of facts, from which it appears:—

That on the 9th of June, 1887, the board appointed the plaintiff to the office of collector, in accordance with the provisions of section 2521 of the Political Code; that the plaintiff duly qualified as prescribed by law, and entered upon the discharge of his duties as such officer, and continued to discharge them until the sixteenth day of July, 1889; that subsequent to such appointment and qualification, and prior to said last-named date, the board adjusted and classified the rates of wharfage on

merchandise and other articles, and determined and directed that such charges should be collected upon that portion thereof described in a written statement to be furnished to the board by the master, owner, consignee, or agent of the vessel, describing the merchandise intended to be discharged from or received on such vessel while lying at and making use of the wharves within the jurisdiction of said board; that by reason of the adoption of such system, the board determined that the services of said Ford as such officer were no longer necessary, and on the twelfth day of July, 1889, passed a resolution requiring said Ford to appear before the board on the sixteenth day of said month, and show cause, if any he had, why he should not be removed from his position as collector; that on said last-named day Ford appeared, and for cause pleaded his appointment and qualification in June, 1887, that his term had not expired, and that he was ready, able, and willing to perform the duties of the office until the expiration of his term, notwithstanding which the board then and there passed a resolution removing him from his position as collector, having before voted to adopt a system for the collection of the revenue, under which system his services as collector would not be necessary; that the board has appointed no other person to succeed Ford in said office of collector, and has determined not to appoint any successor to him, but to abolish said office; that on the 23d of July the board ordered paid a demand in favor of said Ford for seventy dollars, which was to pay for his services from the 24th of June to and including the 16th of July, and no more; that on the 25th of July Ford demanded an additional sum of thirty dollars to pay for his services from the 16th of July to and including the 24th of July, but the board refused to allow the same; that ever since the 16th of July the said Ford has been ready and willing to perform the duties of said office, but the board has refused to accept such performance; that no charges and

no question concerning any cause or causes affecting the official character or competency of said Ford were ever investigated by said board; and that said board has under its control a sufficient fund to pay said claim of thirty dollars.

The board of state harbor commissioners, defendant herein, is an executive board created by law, and having charge of that portion of the bay of San Francisco lying along the water-front of the city and county of San Francisco and adjacent thereto, and of the improvements, rights, easements, and franchises appurtenant thereto and connected therewith, of the construction and maintenance of the sea-wall, wharves, docks, etc., and of the collection of the revenues therefrom. It was first created and organized under the "act to provide for the improvement and protection of the wharves, docks, and water-front of the city and county of San Francisco," approved April 24, 1863. (Stats. 1863, p. 406.) This act authorized the leasing out of the wharves as fast as they came into the possession of the board, for terms not exceeding three years, and in section 5 provided: "Should the commissioners be unable to lease any wharf or other work coming into their possession, they shall employ some suitable person to collect the revenue which may arise from such wharf or other work, and pay him a proper compensation therefor, not exceeding the rate of $150 per month, and not in any case exceeding the amount by him collected."

In 1864 (Stats. 1863-64, p. 141) this provision was amended so as to read as follows: "Should the commissioners be unable to lease any wharf or other work coming into their possession, they shall employ some suitable person or persons to collect the revenue which may arise from such wharf or other work, and pay a proper compensation therefor, not exceeding the rate of one hundred dollars per month, to each person so employed, and not in any case exceeding the sum of two hundred dol-

lars per month, for collecting the revenue as aforesaid, and not exceeding the amount collected from such wharf or other work."

This provision was carried into the Political Code of 1872, as section 2527, without any material change. In 1876 the entire article of the Political Code relating to harbor commissioners was remodeled, and in section 2522 it was provided: "Said commissioners shall also appoint a sufficient number of persons wharfingers to collect the revenue arising from dockage, cranage, rents, and tolls by authority of this article, and may also appoint a sufficient number of persons toll collectors to collect the tolls authorized to be collected by this article."

Thus the provision as to the method of collecting the revenue stood until 1883, when it was again remodeled, and transferred to section 2521 of the Political Code, which is the section coming up for special consideration in this case. It will be observed that up to the remodeling in 1883 wharfingers and collectors, or toll collectors, were mere appointees of the board. They were not denominated as officers, and no terms of office were fixed for them. Like any other appointees or employees, they were subject to appointment and removal at the pleasure of the board.

The changes of 1883 involved the remodeling of several sections of the article pertaining to the board, and effected a complete reorganization of the board itself. Section 2521, as then adopted, provided: "The board, on entering on the duties of their office, must appoint the following *officers*, viz., a secretary, an assistant secretary, an attorney, a chief engineer, a chief wharfinger, and *such number of wharfingers and collectors as they deem necessary*. Such officers shall hold for a term of four years from the dates of their respective appointments, but may be removed by the board at any time, after due investigation, for causes affecting their official character or competency. The order for such removal, stating dis-

tinctly the causes therefor, must be entered on their minutes. In case of a vacancy in such offices by the expiration of a term, or for any other cause, the board must fill the same by an appointment for four years."

Here will be noticed several significant changes from anything which had been found in the laws before. Certain of the appointees had before that time held positions which had been spoken of as offices, such as the secretary, assistant secretary, and chief wharfinger, who had been required to give bonds for "the faithful performance of the duties of their offices," but no one of them had ever before been declared or designated by law as an officer having a fixed term of office, or protected from discharge at the pleasure of the board; and the term "officer," or "office," was never before applied to the position of wharfinger, or collector, or toll collector, although all of them were required to give bonds for the faithful discharge of their duties. Now, however, every appointee of the board, except mere manual laborers, was designated as an "officer," and his place as an "office," with a fixed term, running to the full limit allowed by the constitution, protected in express terms against removal, except for cause affecting his official character or competency, and after due investigation; and the term was to run for the full four years without regard to the time when it should begin, or any attempt to make the beginning or ending of the term correspond in time with that of other officers of the state, or of any department of either state or local government. Even in case of vacancy the appointment was not, as in other cases, to fill the unexpired term, but for a full term of four years, commencing at a time when the vacancy was filled. The wisdom of or the motive for this radical change and departure from the rules of practice usually adopted in other cases are matters with which this court has nothing to do, and over which it has no control. Our only inquiry is, How far is the statute binding upon the state

to keep a man in office after it has ceased to have any use for the office or the officer?

It may be conceded, for the purposes of this case, that the contention of plaintiff, if made in behalf of the secretary, assistant secretary, attorney, chief engineer or chief wharfinger, would be correct (although we do not now so decide); but does it follow that it is also correct when applied to the offices of wharfingers or collectors? The secretary, assistant secretary, attorney, chief engineer and chief wharfinger hold offices created by the legislature itself, with fixed terms. But not so with the wharfingers and collectors. The same law which authorizes the board to fill the offices created by the legislature authorizes the board to create these latter offices and fill them as it deems necessary. It is only when the board has deemed it necessary to fill the place of wharfinger or collector, and has filled the place, that it becomes an office or has a term. Having created and filled the office, such filling is for the term, and during the term the board is prohibited by law from *creating a vacancy in the office*, except after due investigation and for cause. But it by no means follows that it may not abolish that which it created, — the office itself, — and thus dispense with the officer. The legislature has not said to the board, "There shall be a collector, whom you may appoint, who shall hold his office for four years," but it has said, "If you deem a collector necessary, you may appoint one, and in that case his term of office shall be for four years." It thus delegated to the board the power to create the office or not, as it might deem best.

Plaintiff contends that the legislature having provided by law that if such an office was created and filled, the term should be four years, and that during that time the incumbent could be removed only for cause, the office itself cannot be abolished, and the incumbent thus deprived of his office. Several authorities have been cited in support of this proposition, chief among which are

*People* v. *Hill*, 7 Cal. 103, and *People* v. *Jewett*, 6 Cal. 291. But none of them are directly in point. Both the cases mentioned were cases of attempted removal of one person and appointment of another to the same office; not of removal because the office itself was abolished.

The case at bar is more like that of *State* v. *Smith*, 65 N. C. 369, cited by defendant. The constitution of North Carolina provided that "the general assembly shall provide for the establishment of special courts for the trial of misdemeanors in cities and towns where the same may be necessary." [As here, the board might appoint such collectors as it should deem necessary.] In 1868 the general assembly by law established a special court for the city of Wilmington, and provided for a judge of said court to be appointed by the governor, to hold office for the term of eight years. The governor appointed Cantwell judge of the court, and he entered upon the discharge of the duties of his office. In 1871 the general assembly repealed the law creating the court. The question was, whether Cantwell could thus be deprived of his office before the expiration of his term. To this the court said: "If the effect be to abolish the court, the incidental effect must be that the incumbent of the office can no longer discharge the duties of a judge, for there can be no officer where there is no office," and held that the right of the general assembly thus to abolish the office was "too clear for discussion."

So in this state it has been held that when the legislature has created an office provided for or contemplated by the constitution, and it has been filled, the office may be destroyed during the term of the incumbent. (*People* v. *Squires*, 14 Cal. 13.) In *People* v. *Jewett*, *supra*, cited by plaintiff, it was held that the power to create an office included the power to destroy or abolish it. In *People* v. *Banvard*, 27 Cal. 475, the question was, whether a county treasurer could be legislated out of office during the term for which he was elected,— a term regularly

fixed and established by law. The court declared that the question was not an open one; that it had been met and determined in *People* v. *Squires, supra.* *In re Bulger, In re Merrill*, 45 Cal. 553, this court decided two points bearing upon the question involved in this case: 1. That the legislature had power to delegate, even to a mere voluntary association, the power to appoint to a position which the law had declared to be a public office; 2. That the legislature can abolish or change an office created by it, and it may extend or abridge the terms of its incumbents at pleasure.

· The exercise of this power to abolish an office by the same authority that created it and fixed its term, and thus remove the incumbent before the expiration of his term, has been too frequent and too long practiced in this state to leave the question of the right to do so longer open to discussion. The legislature abolishes offices of its creation, and thereby removes the incumbents thereof during their terms of office at its pleasure. A significant instance of its exercise of this power is found in the very act under which the present board of harbor commissioners exists. The board was fully organized under the provisions of the Political Code as they had been remodeled in 1876, when, in 1883, the legislature, by an amendment of the code, legislated all the members out of office, notwithstanding their fixed terms, which had not expired, and provided for the immediate appointment of an entire new board. So, also, the people abolish offices which have been created, and the terms whereof have been fixed by them, in the constitution itself, and thus remove officers of their own election during the terms for which they have been elected. In this way this court itself has been more than once reorganized, its judges removed during the constitutional terms for which they had been elected, a new court organized, with new judges on its bench. By the adoption of the constitution of 1879, the entire judiciary

of the state was removed, although the majority of its officers were in the midst of their terms of office; and at the same time and by the same act many others of the state and county officers were deprived of their offices, not by the expiration of their terms, but by the abolition of the offices themselves. This was but the exercise by the people of the power to abolish the offices which they had themselves created, and no one ever questioned their power. So whenever the people, directly or through the legislature, clothe any department of the government, or any of its boards or officers, with power at discretion to create an office, they clothe it with a like power to abolish the same office. The counsel for defendant have cited cases from more than half the states in the Union in support of this proposition, that the power which creates an office may abolish it, without regard to the expiration of the term of the incumbent. But in view of the decisions and practice in our own state, it is unnecessary to review them.

To all this, however, it may be replied (and perhaps that is the fair construction of the contention of plain-tiff, although he has not expressed it in that form) that the office here under discussion was created and its term fixed by the legislature, and it is the board, and not the legislature, which attempts to abolish it. In a narrow, technical, and restricted sense it may be true that the legislature created the office and fixed its term, but not in the broad sense that gives the legislature any control over the existence of the office. It has not appointed the officer, or said that there shall be such an office or officer. It has simply authorized a subordinate body, the defendant here, to make certain appointments at its discretion,—as it "may deem necessary," and provided that if such appointments were made, the appointees should be officers holding for a term of four years, and during that term protected from the perils caused by the pressure of others for the places held by them, by a pro-

vision that they may be removed by the board only after due investigation for causes affecting their official character or competency. This certainly does not protect them against the abolition of the office. And who is to abolish it? The legislature did not establish it, or determine the question of the expediency or necessity of establishing it. It delegated to another the power to establish it when that other should deem it necessary. *Ex necessitati*, that carried with it the power to abolish, whenever there was no longer a necessity to maintain that which had been so established.

And we are not without an expression of legislative judgment as to whether or not these offices should be abolished. The general provisions of law for the organization, powers, and duties of the board of state harbor commissioners are, and since 1872 have been, found in the article on that subject in the Political Code. But the whole law affecting said board is not found there. In reference to this board and the subject-matter of its jurisdiction, the legislature has been in the habit, as it has in reference to other subject-matters embraced in the codes, of legislating from time to time by acts other than those amendatory of the codes. Whether this was wise or unwise is not for us to say. Our duty is to examine and construe these acts and the codes together, and whenever they are not in conflict with each other, to give force and effect to both. In 1878 the legislature passed "an act concerning the water-front of the city and county of San Francisco." (Stats. 1877-78, p. 417.) This act conferred certain powers and imposed certain duties upon the board of state harbor commissioners not imposed or conferred by the provisions of the code. In 1880 another act was passed, amendatory of the one last mentioned, and conferring further powers on the board of state harbor commissioners. (Stats. 1880, p. 10.) Section 4 of that act reads as follows:—

"SEC. 4. As soon as practicable, the rates of wharfage

on merchandise and other articles must be adjusted and classified upon such system, and be collected in such manner and by such officers as the commissioners may determine and direct. The duties of such officers, their compensation and amount of bond for faithful performance of duty, shall be fixed by the commissioners. When such system is put in force, no tolls must be collected by the load or vehicle on any merchandise passing on or off the wharves, and the system of collection by toll collectors must cease."

This provision still remains in force, unless repealed by implication by the passage of the amendments made to the code in 1883. There is nothing in the act making those amendments touching upon the subject-matter of this provision, or in conflict with it, unless it be held that the provision authorizing the board to appoint such number of collectors as it should deem necessary, and fixing their terms of office, is so in conflict. We do not think the two provisions conflict with each other. They certainly do not to such an extent that force and effect may not be given to both, and if it had been intended by the later act to have repealed the former, it would have been easy to say so, but this was not done. On the contrary, in the code itself we find a provision looking to the same result. In section 2524, as it was passed in 1876, and still remains unchanged, we find the following provision:—

"And the commissioners and the mayor of San Francisco may so modify and establish such rates of dockage and wharfage as will produce a revenue not to exceed in amount the moneys collected in the year 1875, collecting as near as possible equal amounts from dockage and wharfage. When such modification has been made, the collection of tolls must be abolished and the toll collectors discharged."

It will thus be seen that as early as 1876 the legislature contemplated and authorized the adoption of a

system by the board by means of which the army of toll collectors on the city front should be withdrawn. To hasten the coming of that period, the act of 1880 enlarged their discretion as to the kind of system which might be adopted, and enabled the board to act without the aid of the mayor in the matter; and when the legislature of 1883 came to revise and remodel the code on the subject, it left both provisions in full force, at least in so far as related to the discharge of toll collectors. If it should be said that only one of the two systems could be adopted, then of course it would be the one last provided for. And as that is practically the system which the board has adopted, and it accomplishes the result, it follows that the will of the legislature is being carried into effect.

Our conclusion therefore is, that the board had full power to abolish the office as it did, without regard to the term of the officer, and thereupon discharge him; and that from the date when the office was so abolished and he discharged, the plaintiff had no further claim upon the board, either to accept his service or to render him compensation.

The writ is denied and the complaint dismissed.

McFARLAND, J., and SHARPSTEIN, J., concurred.

THORNTON, J., dissented.

PATERSON, J., concurred in the judgment.

BEATTY, C. J., and WORKS, J., concurring.— We concur. The defendant is an executive board, created by law, and charged with the care and improvement of the water-front of San Francisco. It has control of certain wharves, docks, slips, etc., and collects wharfage, tolls, and other charges for the use thereof. It was first organized under the act to "provide for the improvement and protection of the wharves, docks, and water-front of

the city and county of San Francisco," approved April 24, 1863. (Stats. 1863, p. 406.)

. From time to time this act has been amended and supplemented. It was carried into the Political. Code upon its adoption in 1872, and has since been remodeled at different sessions of the legislature.

From the establishment of the board down to the year 1883 the commissioners were authorized to appoint wharfingers and toll collectors; the provision concerning these employees in the last amendment of the Political Code previous to 1883 being as follows: "Said commissioners shall also appoint a sufficient number of persons wharfingers to collect the revenue arising from dockage, cranage, rents, and tolls by authority of this article, and may also appoint a sufficient number of persons toll collectors to collect the tolls authorized by this article." (Pol. Code, sec. 2522, amendments of 1876.)

In 1883 the Political Code was so amended as to effect a complete reorganization of the board, and the provisions relating to wharfingers and collectors were radically changed.

By section 2521, it was enacted that "the board [the new board] on entering on the duties of their office, must appoint the following *officers*, viz., a secretary, an assistant secretary, an attorney, a chief engineer, a chief wharfinger, *and such number of wharfingers and collectors as they deem necessary*. Such officers shall hold for a term of four years from the dates of their respective appointments, but may be removed by the board at any time, after due investigation, for causes affecting their official character or competency. The order for such removal, stating distinctly the causes therefor, must be entered on their minutes. In case of a vacancy in such offices by the expiration of a term, or for any other cause, the board must fill the same by an appointment for four years."

By section 2522, prescribing the duties of the various officers, it was provided that "the wharfingers shall have supervision of the wharves to which they are assigned, and must require the regulations of the board and orders of the chief wharfinger to be respected and obeyed, and good order to be preserved thereon. The collectors must collect the revenues in such manner as the board may direct, and must daily account for and pay all moneys into the office. The wharfingers and collectors must each take and subscribe an official oath, and give such official bond as the board may require. . . . . *All the above-named officers* must perform such other duties pertaining to their positions as the board may from time to time prescribe."

Section 2250 provides for the salaries of officers, and fixes that of the wharfingers at $125, and that of collectors at $100 per month.

Under this amended and revised statute, the present board was organized, and on the 9th of June, 1887, the plaintiff was appointed a collector.

Recently the board has decided to introduce some changes in their system of collecting revenues, which render the services of some of its collectors unnecessary, and for that reason alone they have undertaken to remove the plaintiff from his position, and to abolish his office. There is no charge against him affecting his official character or competency, but he has, by resolution of the board, after notice of its intention so to do, been removed in the interest of economy in the administration of its business. No person has been appointed to succeed him, and there is no intention to make such appointment. On the contrary, the office, so far as the board has the power to abolish it, is abolished.

The plaintiff, claiming to be an officer with a fixed term and stated salary, has instituted this original proceeding by *mandamus* to compel the defendant to pay him the salary accrued since the date of its order declar-

ing his removal. It is admitted that his salary since that date has not been paid; that the defendant has funds to pay; and that it is its plain statutory duty to pay if the plaintiff is, notwithstanding its order of removal, still a collector. It is further admitted that the plaintiff has no other plain, speedy, or adequate remedy, and, in short, that, if the defendant had no power to abolish the collectorship held by the plaintiff, he is entitled to a peremptory writ.

Had the defendant such power?

If section 2521, as re-enacted in 1883, is constitutional and valid, we do not see how it can be so construed as to allow the removal of the collector, except for one of the causes enumerated, nor how the board could in such case refuse to fill the vacancy thereby created by a new appointment for a term of four years, however useless the services of such collector may have become. The result of this construction seems to be absurd, and it may well be supposed that it was not actually contemplated by the legislature; but in seeking the intent of · the law-makers, we must be guided by the terms of the law, if they are plain and unambiguous, and we cannot, even for the purpose of avoiding serious inconvenience, adopt a construction in conflict with the obvious effect of the language of a statute.

We discover no ambiguity here. On the contrary, the legislature has plainly said that the board of harbor commissioners, on entering on the duties of their office, shall appoint a secretary and certain other named officers, and also as many wharfingers and collectors as they deem necessary. These latter, like the rest, are to be officers with prescribed duties, a fixed term of four years, and stated salaries. They are to take the oath of office and furnish bonds, and are to be irremovable during the term for which they are appointed, except after notice and hearing upon charges affecting their official character and competency.

Moreover, for each wharfinger or collector appointed an office is created, — a collectorship or wharfingership which thereafter continues in permanence, and must be filled for a full term of four years, whenever it becomes vacant by expiration of a term, *or for any other cause.* It may be created — a hundred or a thousand collectorships or wharfingerships may be created — by the board, but not one can be abolished. The highest number created at any time is for all future time the *minimum* number of said offices until the legislature shall intervene and abolish so many as it may deem to be superfluous. It matters not how clearly it may be demonstrated that under a new and improved system of administration the services of many or most of these officers could be profitably dispensed with, the board which created the offices cannot abolish them, but must go on in the old way until the legislature comes to its relief.

We cannot, we repeat, see any way to avoid this conclusion, if section 2521 is in all respects constitutional and valid.

Counsel for defendant have referred us to a provision contained in an independent statute passed in 1880 (Stats. 1880, p. 10), and also contained in section 2524 of the Political Code, which they contend modifies the construction or changes the operation of section 2521; but we do not think this contention can be maintained The provision in question is one which, in substance, empowers the board to fix its revenue upon a basis which will admit of the abolition of *tolls,* and directs the commissioners thereupon to abolish tolls, and discharge the *toll collectors.* But this provision existed, not only in the statutes, but in the Political Code before the revision of 1883, and referred exclusively to the tolls collected from wagons and other vehicles passing to and from the wharves and slips. It had no reference to the wharfingers or to the charges collected by them for dockage, etc. By the revision of 1883 the collectors therein

provided for were charged with the collection of the entire revenue of the board, including that part formerly collected by the wharfingers; in other words, the collectors under the new law differ from the toll collectors under the old law, not only in name, but in function; and the collectors cannot be discharged as provided in the statute of 1880, and the corresponding provisions of section 2524 with respect to the toll collectors, without discharging the only persons who, under the new system, have anything to do with the collection of the revenue of the board. This being so, the mere fact that, in re-enacting section 2524 in 1887 and 1889 for the purpose of amending it in other particulars, this old and obsolete clause referring to the toll collectors was re-enacted, will not justify us in holding that the legislature intended thereby to alter or modify the operation of the provisions of section 2521 respecting the term and tenure of the collectors.

But satisfied as we are that under the statute, considered by itself, the defendant has no power to remove the plaintiff upon the ground assigned for their action, we are nevertheless not satisfied that his position can be sustained.

If the appointment of each collector by the board creates an office which can only be abolished by law, then the act of the board in making the appointment, and thus creating the office, has all the force and effect of a statute, and we are brought to the inquiry whether the legislature can in this way delegate to a board of three persons the power to make laws creating offices to be filled by officers holding for the full constitutional term of four years, with salaries payable out of the public revenues, and irremovable during the term prescribed.

It is settled, we suppose, beyond controversy that the power delegated to the legislature to make laws cannot be delegated by the legislature to any subordinate body;

and if the power to be exercised by the board of harbor commissioners under the provisions of section 2521, according to the construction which the plaintiff contends for, and which we are unable to deny, amounts in effect to the law-making power, it follows that such provisions must be unconstitutional.

We think that the creation of an office with permanent tenure, and salary payable out of the public revenues, which must continue to exist until abolished by statute, can only be accomplished by the exercise of a power essentially legislative, — a power which the legislature alone possesses under the constitution, and which cannot be delegated.

We do not question the power of the legislature to authorize an executive board, such as the harbor commissioners, to appoint persons to fill offices which have been created by law, nor its power to give to such appointees a permanent tenure of their office within constitutional limits. Nor do we deny the validity of a provision which protects subordinate employees in public institutions from arbitrary removal from their positions in order to make room for others. We merely hold that the legislature cannot commit to the discretion of others the important function of creating public offices in unlimited or indefinite number, — offices which the power creating them is incompetent to abolish.

Rehearing denied.