[Civ. No. 911.   Third Appellate District.—September 28, 1912.]

CITY OF WOODLAND (a Municipal Corporation), Appellant, v. S. A. LEECH et al., Defendants; R. B. GRANSTON, J. MURRAY, EMIL KRELLENBERG and JAMES FEENEY, Respondents.

MUNICIPAL CORPORATION ACT—CONSTRUCTION—COLLECTION OF LICENSES IN CITY OF WOODLAND—POWER OF CITY TRUSTEES.—Under the Municipal Corporation Act, as amended in 1901, the provisions of section 571 thereof as then amended authorize the board of trustees of the city of Woodland, as a municipal corporation of the fifth class, in its discretion to enact an ordinance prior to a city election providing that "the city treasurer elected shall be *ex-officio* city tax collector and license-tax collector," and the effect of such ordinance enacted under a later provision than section 790 of that act will be to relieve the city marshal of the prior duty imposed upon him by said section 790, that the marshal "shall receive from the clerk all city licenses and collect the same."

ID.—UNAUTHORIZED COLLECTION AND MISAPPROPRIATION OF LICENSE-TAXES BY CITY MARSHAL—SURETIES ON OFFICIAL BOND NOT LIABLE.—The unauthorized collection of license-taxes by the city marshal after his power to collect the same had ceased by the authorized action of the city trustees in relieving him of power and conferring exclusive power upon the city treasurer to collect the same, and the misappropriation by the city marshal to his own use of the taxes so collected without authority, cannot render the sureties on his official bond liable for such misappropriation, since their obligation contemplated and embraced only the faithful performance of *official duty* on the part of their principal.

ID.—POWER OF LEGISLATURE TO DELEGATE AUTHORITY TO CITY TRUSTEES.—There is no constitutional inhibition to the delegation by the legislature of authority to the board of trustees of a city to relieve one city officer of a certain ministerial executive duty, and transfer the same to another city officer, where the effect is not to destroy the first office, or to contravene any general law, but the legislation is in furtherance of the general scheme to clothe the local governing body with a large measure of authority in determining the extent and character of the duties to be exercised by their subordinate executive officers.

APPEAL from a judgment of the Superior Court of Yolo County.   N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

G. E. Whitney, Charles W. Thomas, and Charles W. Thomas, Jr., for Appellant.

Arthur C. Huston, and Harry L. Huston, for Respondents.

BURNETT, J.—The appeal is from the judgment on the judgment-roll. The defendant Leech was not served and did not appear at the trial. He was elected marshal of the city of Woodland, a municipal corporation of the fifth class, and the respondents signed his official bond containing the following condition: "Now, therefore, the condition of this obligation is such, that if the said S. A. Leech shall well and faithfully perform all official duties now required of him by law, and shall well and faithfully execute and perform all the duties of marshal and *ex officio* superintendent of streets required by any law to be enacted subsequently to the execution of this bond, then this obligation is to be void and of no effect, otherwise to remain in full force and virtue." The action grew out of the fact that said Leech, while acting as marshal, collected quite a sum of money, representing a license-tax, and appropriated the same to his own use. The court found that the money collected by him was not by virtue of his office as marshal or *ex officio* superintendent of streets and that as such marshal he was not authorized or employed to collect any license in the city of Woodland; nor was it the duty or right of said Leech to collect such licenses but that, by virtue of an ordinance duly passed by the board of trustees of said city, it was the duty of the city treasurer to collect all licenses in the city of Woodland. The sureties were therefore exonerated from liability since their obligation contemplated and embraced only the faithful discharge of *official duty* on the part of their principal.

It is not disputed—indeed, it is conceded—that the sureties have a right to stand upon the strict letter of their bond and that the only question involved in the case is whether, under the law, it was the duty of the marshal to collect said license-tax. This is to be determined by the construction of sections 751 and 790 of the Municipal Corporation Bill. The former, as amended in 1901, after designating the officers in

whom the government of a city of the fifth class shall be vested, contains this provision: "provided, that the board of trustees may, in its discretion, by an ordinance adopted, published and recorded as required for general ordinances, at least thirty days before a general city election, at which city officers are to be elected, unite and consolidate certain offices by declaring . . . 3. The city treasurer elected shall be *ex officio* city tax-collector and license-tax collector." Said section 790, in prescribing the duties of the city marshal, provides that "He shall receive from the clerk all city licenses and collect the same." It is not disputed that said section 751 is a later enactment than section 790.

Reading these two sections together, we think no reasonable doubt can exist that, after providing that the marshal should collect these license-taxes, the legislature concluded to authorize the board of trustees in the discretion to relieve the marshal of this duty and impose it upon the city treasurer. This view is immediately suggested by the most casual consideration of the terms employed. We would have no more significant or definite expression of the legislative intention if, in one section, it were enacted that "the marshal shall receive from the clerk all city licenses and collect the same, provided that the board of trustees may in its discretion by ordinance empower and direct the city treasurer to collect said licenses." If the two sections were so combined, the learned counsel for appellant would probably not deem it worth while to argue as to what the legislature intended. It is true that, by said section 751, it is not provided in amplified form that the city trustees may authorize the city treasurer to collect the license-tax, but this duty is necessarily implied in the term "license-tax collector." When the legislature empowered the city trustees to make the city treasurer *ex officio* license-tax collector it could mean nothing else than that they might constitute him "collector of the license-tax." Manifestly, certain public functions could not be so sententiously designated, but in the case at bar the public duty is clearly and unequivocally set forth by the simple phraseology employed. Appellant suggests some examples wherein more elaboration would be required to make the grant of power specific and certain. The creation of an office, the incumbent being called "Health Officer," with no duties assigned, would

20 Cal. App.—2

probably not operate to relieve the marshal of his duties imposed by the statute appertaining to the public health. A similar situation would be presented in case of the designation "peace officer" or "police officer" or "executioner." These terms are too vague and indefinite to express any clear legislative intent as to the respective public duties to be performed. But we do not consider such instances analogous to this. The legislature having authorized the city trustees to impose the duty of collecting these taxes upon the city treasurer, they are necessarily clothed with power to pass such subsidiary acts or ordinances as are incidental and necessary to the exercise of this duty by said treasurer. No one disputes the rule to be as stated by Mr. Dillon (1 Dillon on Municipal Corporations, 4th ed., sec. 89) that "it is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incident to the powers expressly granted; 3. Those essential to the declared objects and purposes of the corporation—not simply convenient but indispensable." It follows that we must give effect to the presumption that, whatever ordinance was necessary to carry said section 751 into operation, was adopted by said city trustees.

We find nothing in the constitution to preclude the legislature from delegating this authority to the board of trustees. The condition simply amounts to a grant of power, to be exercised in the discretion of the trustees, to relieve one municipal officer of a ministerial executive duty and transfer it to another. Even if it be regarded as a legislative attempt to confer authority upon the local law-making body to create the office of city tax-collector, it does not seem to be obnoxious to any constitutional provision. It is manifestly not the case where by ordinance the city trustees attempt to repeal or nullify a statute or to deprive any official of authority conferred by the legislature, but it presents the instance, as already seen, of the exercise of power expressly delegated by legislative enactment.

It is not, of course, necessary for the legislature to prescribe the duties of all city officers. This power may be conferred upon the city and it is certainly competent for the legislature

to authorize the city to make changes in the duties of the various officers when it is deemed for the best interests of the community to do so. The constitutional limitation is prescribed in article XI, section 6, which provides that "Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization and classification, in proportion to population, of cities and towns, which laws may be altered, amended or repealed." It is not disputed that the grant of power in controversy is general in its nature within the contemplation of said constitutional provision and, conceding that we have an instance of the creation of a municipal office, no reason is apparent why we may not accept, as an accurate statement of the governing principle in the case, the following from 28 Cyc., p. 400: "Municipal offices can only be created by legislation. This creative act may be either immediate when done by the general assembly in which rests all inherent creative power for corporations; or delegated when the corporation is expressly empowered by charter or general law to create the office for itself. Creation by the municipality can only be effected by means of ordinance or by law. Offices may be created not only by express and positive act of legislation, but also by implication, as where an office is referred to as existing and the duties of the officers are prescribed, but the implication must be plain and certain."

In this connection the case of *DeMerritt* v. *Weldon*, 154 Cal. 545, [16 Ann. Cas. 955, 98 Pac. 537, 671], is somewhat instructive, although the facts there were different. The question involved was the authority of the city trustees to fix the salary of the marshal according to the following provision in section 855 of the Municipal Corporation Bill: "The clerk, treasurer, marshal, and recorder shall severally receive, at stated times, a compensation, to be fixed by ordinance by the board of trustees, which compensation shall not be increased or diminished after their election or during their several terms of office." It was held that the power was clearly granted to the board of trustees to fix the compensation of the marshal "at any sum it deems proper, free from supervision or review on the part of the courts, subject to the limitation that it may not effectually provide that there shall be

no compensation at all, nor practically destroy the office by fixing the compensation at so low a figure that no one would discharge the duties of the office for the compensation fixed. Such a provision by the trustees would conflict with the act of the legislature and therefore would be void." Instead of fixing his compensation, the trustees in the case at bar, authorized as they were by said section 751, relieved the marshal of a certain duty which otherwise under said section 790, he would be required to perform. The effect is not to destroy the office of marshal or to contravene any general law, but the legislation is in furtherance of the general scheme to clothe the local governing body with a large measure of authority in the determination of the extent and character of the duties to be exercised by their subordinate executive officers.

The rule, it may be said as to county officers is different and this explains many of the cases cited by appellant, as is indicated by the following quotation from *People* v. *Wheeler,* 136 Cal. 655, [69 Pac. 435]. "For with relation to county offices, it is the constitutional duty of the legislature not only to provide for the election of the officers, but also to fix their terms of office, to prescribe their duties, and to regulate their salaries or compensation; and this duty could not be delegated to the board of supervisors or others.   (Const., Art. II, sec. 5; *Ventura* v. *Clay,* 112 Cal. 70, [44 Pac. 488]; *County of Eldorado* v. *Meiss,* 100 Cal. 274, [34 Pac. 716]; *Farnell* v. *Board of Trustees,* 85 Cal. 415, [24 Pac. 868]; *County of Los Angeles* v. *Lopez,* 104 Cal. 258, [38 Pac. 42]; *People* v. *Johanson,* 95 Cal. 471, [31 Pac. 611]; *Dougherty* v. *Austin,* 94 Cal. 601, [16 L. R. A. 161, 28 Pac. 834, 29 Pac. 1092]; *Dwyer* v. *Parker,* 115 Cal. 544, [47 Pac. 372].)"

We think effect should be given to the intention of the legislature as declared, and the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 27, 1912.