[Civ. No. 6790. Third Dist. June 6, 1942.]

H. O. CLELAND, Petitioner, v. THE SUPERIOR COURT OF MENDOCINO COUNTY, Respondent.

Preston & Gibson and Thomas & Thomas for Petitioner.

James E. Busch, District Attorney, and George A. Faraday, Deputy District Attorney, for Respondent.

THE COURT.—By means of a writ of prohibition the petitioner seeks to restrain the Superior Court of Mendocino County from proceeding to try him in a criminal action under an indictment charging him as an ''officer,'' to wit, as superintendent of the Mendocino County Farm and Hospital, with being ''interested in contracts'' contrary to section 71 of the Penal Code.

It is contended, as a matter of law, that no such *office* exists, or was created; that the petitioner is a mere *employee,* as distinguished from a county officer; that the petitioner's alleged ''interest in contracts'' is not a criminal offense under section 71 of the Penal Code, or at all, for the reason that he is not an officer, and that the respondent is therefore without jurisdiction to try the case.

It is alleged that the petitioner, H. O. Cleland, was appointed September 12, 1932, by the Board of Supervisors of Mendocino County as ''Superintendent of the Mendocino County Farm and Hospital,'' and that, by resolution of the board, he was then,

''granted full charge in all matters that pertain to the conduct of the Mendocino County Farm and Hospital, and that . . . he is hereby granted and/or given charge and control of all employees of said Mendocino County Farm and Hospital, and that all powers and/or duties herein granted to the Superintendent . . . be, and they are revokable by the Board of Supervisors of the County of Mendocino, State of California, at any time.''

It is further alleged that said employment was never ter-

minated, and, upon the contrary, that he has continued to serve the board in that capacity as superintendent, to the present time; that on October 7, 1941, the grand jury of Mendocino County returned an indictment against him, consisting of thirty-one counts, separately charging him, as a *public officer*, to wit, as superintendent of the Mendocino County Farm and Hospital, with different felonies, under section 71 of the Penal Code, in that he was interested in the several specified contracts for the purchase of cattle, hogs and beef for use in and upon the Mendocino County Farm and Hospital, and on account of the renting of certain machinery, from each of which transactions he unlawfully derived personal profits of from $40 to $150.

To each count of said indictment the defendant demurred on the ground that it fails to state a public offense against him as an officer, or at all, and that the court was therefore without jurisdiction to try the cause. A motion to dismiss the indictment for lack of jurisdiction was denied. The demurrer was overruled, and the defendant pleaded not guilty to each charge. Over the objection of the defendant the cause was set for trial. It is alleged that unless restrained from so doing the court will proceed to try said cause and will instruct the jury on said trial that the defendant, as superintendent of said county farm and hospital, served ''as an officer,'' as contemplated by section 71 of the Penal Code. The petition asserts that he is without a speedy or adequate remedy in said matter.

The respondent filed in this court its demurrer to said petition for a writ of prohibition on the ground that the pleading fails to state a cause of action. At the same time it filed an answer which denies the material allegations of the petition, with the exception of the statements regarding the presenting of the indictment and the subsequent proceedings with relation thereto, which are admitted, including the affirmative acknowledgment that by overruling the demurrer and denying the motion to quash the indictment, the court ''inferentially held that the petitioner is a county officer, and will so instruct the jury impanelled to try the case.''

The writ of prohibition is a proper remedy under such circumstances as are presented on this proceeding, wherein it appears that the facts related do not constitute a criminal offense and that the indictment is therefore void, for the reason that the accused person is granted no right of appeal from either the order denying his motion to quash

the indictment, or from the order overruling the demurrer thereto. His right of appeal from a possible final adverse judgment may be deemed to deny him a speedy or adequate remedy, where the court is without or it exceeds its jurisdiction in passing upon the preliminary motion to quash the indictment and the demurrer. (*Greenberg* v. *Superior Court of the City and County of San Francisco,* 19 Cal. (2d) 319 [121 P. (2d) 713].)

■ The chief issue of this proceeding is whether the petitioner, as superintendent of the Mendocino County Farm and Hospital, in acquiring his alleged interest in the contracts for which he was indicted, acted in the capacity of an "officer" of Mendocino County, within contemplation of the language of section 71 of the Penal Code, or whether he is a mere employee of the board of supervisors and therefore exempt from prosecution for a criminal offense under that statute. Involved in that question is the further inquiry as to whether the board of supervisors had legal authority to appoint a "Superintendent of the Mendocino County Farm and Hospital." If no such legal or constitutional authority was delegated to the board, then it follows that the petitioner was not an officer of the county and could not lawfully be prosecuted for malfeasance of that alleged office.

We are convinced the term "officers" as it is used in section 71 of the Penal Code refers only to the duly-appointed or elected public officers of a state, county, township, city or other subdivision of the state, as distinguished from mere employees thereof. This construction is confirmed by reference to section 920 of the Political Code, which similarly prohibits such specified officers from being "interested in any contract made by them *in their official capacity*." (Italics ours.) Section 71 of the Penal Code has no application to mere employees. It provides that:

"Every officer or person prohibited by the laws of this state from making or being interested in contracts . . . who violates any of the provisions of such laws, is punishable by a fine of not more than one thousand dollars, or by imprisonment in the state prison not more than five years, and is forever disqualified from holding any office in this state."

This penalty, including future disqualification from ever holding "any office in this state" indicates that the law is directed against the reprehensible crime of violating a public trust.

Our attention is directed to no law of this state, other than the two statutes above referred to, which prohibits an officer, or any other person from becoming interested in such contracts. We assume no other statute exists which prohibits any class of persons other than officers from being so interested in such contracts. Certainly neither of these statutes makes reference to employees or to any other class of persons than that of officers. If the Legislature had intended to render mere employees, as distinguished from officers, guilty of a felony for violation of those code sections, it would have been very easy to have so stated. We must assume the Legislature did not so intend.

There is no doubt that under proper legislative and constitutional authority, boards of supervisors of the various counties may establish and maintain hospitals, almshouses, and county farms, and, under proper circumstances, may appoint the necessary physicians, officers and employees thereof. Section 203 of the Welfare and Institutions Code, formerly section 4223 of the Political Code, provides that:

"The board of supervisors in each county may establish and maintain a county hospital, prescribe rules for the government and management thereof, and appoint a county physician and other necessary officers and employees thereof, who shall hold office during the pleasure of the board."

Similarly, it is provided in section 2400 of the Welfare and Institutions Code, formerly section 4224 of the Political Code, in that regard:

"The county boards of supervisors may establish almshouses and county farms, prescribe rules and regulations for their government and management, and appoint the necessary officers and employees thereof, who shall hold office during the pleasure of the board."

Section 4013 of the Political Code designates "as the officers of a county" seventeen classes by particular titles. Subdivision eighteen of that section then authorizes the appointment or election of "such other officers as may be provided by law." It follows that, to the seventeen named county officers there may also be added such other county officers, as distinguished from mere employees, as may be specifically created and provided for in accordance with constitutional and legislative authority, and not otherwise.

Article IV, section 25, subdivision 28, of the state Constitution prohibits the Legislature from passing "local or special

laws. . . . Creating offices, or prescribing the powers and duties of officers in counties, cities, cities and counties, townships, election or school districts.''

Article XI, section 5, of the Constitution provides that:

''*The legislature,* by general and uniform laws, *shall provide for the election or appointment, in the several counties,* of boards of supervisors, sheriffs, county clerks, district attorneys, and such other county, township, and municipal officers as public convenience may require, *and shall prescribe their duties and fix their terms of office.* . . . The boards of supervisors in the respective counties shall regulate the compensation of all officers in said counties other than boards of supervisors, district attorneys, auditors, and judges of municipal courts, and shall regulate the number, method of appointment, terms of office or employment, and compensation *of all deputies, assistants, and employees* of the counties.'' (Italics added.)

The preceding section of the Constitution has been held to be mandatory upon the Legislature, requiring it to provide for the election or appointment in the several counties, by uniform laws, of particular county officers and to ''prescribe their duties and fix their terms of office.'' (*Welsh* v. *Bramlet,* 98 Cal. 219 [33 Pac. 66].) Likewise it has been held the Legislature may not delegate those powers to a board of supervisors. (*People* v. *Wheeler,* 136 Cal. 652 [69 Pac. 435] ; *City of Woodland* v. *Leech,* 20 Cal. App. 15, 20 [127 Pac. 1040].) The Wheeler case, previously cited, appears to be decisive of the very issue which is determinative of this proceeding. In that case the Board of Supervisors of Plumas County appointed J. S. Wheeler ''County Physician'' of that county pursuant to section 25, subdivision 5, of the act to establish a uniform system of county and township government. (Stats. 1897, pp. 452, 458; Deering's Gen. Laws, Act 1864.) That statute purported to authorize boards of supervisors to procure property, to ''officer and maintain hospitals and poorhouses,'' and to provide for the care and maintenance of the indigent sick and dependent poor of the county. For that purpose the statute then provided that the board of supervisors ''shall appoint some suitable graduate or graduates in medicine to attend to such indigent sick and dependent poor, and to the patients in such hospitals and poorhouses.'' The court held that the preceding subdivision of the statute was an unlawful delegation of the legis-

lative authority to the board of supervisors, contrary to the inhibitions of article XI, section 5, of the Constitution; that the appointment of Mr. Wheeler as "County Physician" therefore did not constitute him a county officer, but on the contrary that he thereby became a mere employee of the board. The court said:

"The only question, therefore, in the case is whether the position to which the defendant was appointed is an office within the meaning of the term as used in the section of the Political Code cited.

"This question, we think, must be answered in the negative. . . . It is clear, therefore,—as also from the subordinate nature of their duties, and other circumstances,—that the physicians employed must be regarded as merely the servants or employees of the board. . . .

"There is nothing in the act now under consideration to indicate an intention on the part of the legislature to create, or rather to provide for the creation, of an indefinite number of offices; and the contrary is indicated by the failure of the act to designate as officers the physicians employed, *or to give them a distinctive name, or to fix their terms of office, or to prescribe their duties or compensations.*

"It may be added that if the act could be thus construed, it would be clearly unconstitutional. For the effect of the act would then be to delegate to the board of supervisors the power to create an indefinite number of public offices, with varying duties and compensation; which cannot be regarded as within duties and compensation; which cannot be regarded as within the constitutional powers of the legislature. 'The legislature cannot commit to the discretion of others the important function of creating public offices in unlimited or indefinite number.' (*Ford* v. *Harbor Commissioners,* 81 Cal. [19], 37 [22 Pac. 278]; *Farrell* v. *Board of Trustees,* 85 Cal. [408] 415 [24 Pac. 868].) Still more obviously would this be the case if the supposed office be regarded as a county office; as, 'if an office at all,' it should be. (*People* v. *Harrington,* 63 Cal. 260.) For with relation to county offices, it is the constitutional duty of the legislature not only to provide for the election of the officers, but also to fix their terms of office, to prescribe their duties, and to regulate their salaries or compensation; and this duty could not be delegated to the board of supervisors or others." (Citing numerous authorities.) (Italics ours.)

██ Based upon the foregoing authority and upon the constitutional inhibition against the Legislature delegating its authority to create county offices, except in the precise manner authorized by article XI, section 5, of the Constitution above quoted, we are satisfied the petitioner, H. O. Cleland, as superintendent of the farm and hospital, was not a *county officer* for the reasons that sections 203 and 2400 of the Welfare and Institutions Code authorize the boards to appoint no specifically designated officers except a county physician, and the Constitution prohibits the Legislature from delegating its power to "prescribe the duties and fix their terms of office." Contrary to the authority conferred by section 203, the board failed to appoint Cleland as county physician. He was appointed as "Superintendent" of the farm and hospital. No such *office* as superintendent is authorized by either of the sections of the code upon which the respondent relies. Moreover, neither the Legislature nor the board fixed the term of office as required by the Constitution. He was merely appointed to serve as such superintendent at the will of the board. No term was fixed. His duties were not prescribed by the Legislature. These circumstances enforce the conclusion that the Legislature did not intend, by the enactment of the two Welfare and Institutions Code sections, to authorize a board of supervisors to create and appoint a superintendent of the farm and hospital as an additional county officer. On the contrary, it appears that those statutes merely provided for additional agents and employees of the board for the management of such institutions.

There is nothing in the late case of *Ogle* v. *Eckel,* 49 Cal. App. (2d) 599 [122 P. (2d) 67], in conflict with what we have previously said regarding the lack of authority on the part of boards of supervisors to create county offices except in strict compliance with the provisions of article XI, section 5, of the Constitution. In the Ogle case, *supra,* the petitioner was duly appointed by the board of supervisors as "County Counsel" of the County of Orange, under the provisions of section 4041.12a of the Political Code. That statute specifically authorizes a board of supervisors in a county having a population in excess of 100,000 persons, to appoint a "County Counsel." It further provides, in accordance with article XI, section 5 of the Constitution, that the duties of the county counsel shall consist of all services which are performed by the district attorney in those counties, except those of a public

prosecutor. The statute also definitely fixes the term of said county counsel at four years and until his successor is appointed and qualified. Thus it appears the statute which was involved in that case did not blindly delegate prohibited authority to boards of supervisors to appoint undesignated officers whose terms of office were not fixed and whose duties were not prescribed, in defiance of the clear mandate of the Constitution. The statute specifically named the office to be created. The term of office was definitely fixed and the duties are clearly prescribed. Under such circumstances the court properly said:

"The office of County Counsel, as here intended to be created and classified by the duties and functions to be performed, is a county office within the meaning of article IV, section 25, subdivision 28" of the Constitution.

This Ogle case seems to give added force to what we have previously said regarding the delegated authority in the present case, in conflict with the mandate of article XI, section 5 of the Constitution, which forces us to conclude that H. O. Cleland was not appointed by the board as a county officer to the position of superintendent of the Mendocino County Farm and Hospital, but that, on the contrary, he is a mere employee of the board, and as such that the court is without jurisdiction to try him on the criminal charges contained in the indictment, for the reason that section 71 of the Penal Code has no application to such offenses committed by a mere employee.

The court is without jurisdiction to try the cause under the circumstances of this case. The respondent's demurrer to the petition is overruled. The writ of prohibition is granted and the court is directed to sustain the defendant's motion to quash the indictment and to discharge him from custody.

Respondent's petition for a hearing by the Supreme Court was denied August 3, 1942.