[Civ. No. 16795. First Dist., Div. One. Aug. 20, 1956.]

COUNTY OF MARIN, Appellant, v. RAFAEL G. DUFFICY, JR., et al., Respondents.

32

W. O. Weissich, District Attorney, and Leland H. Jordan, Chief Deputy, for Appellant.

Haley, Thomas & Buresh and John G. Buresh for Respondents.

AGEE, J. pro tem.*—This is an appeal from a judgment for defendants entered upon the sustaining of their general demurrer to the complaint without leave to amend. The action is brought by the county of Marin, appellant herein, under the provisions of section 26525 of the Government Code, for the recovery of money alleged to have been paid illegally by said county to defendants, respondents herein.

The complaint alleges that respondent Rafael G. Dufficy, Jr., is the county physician of Marin County; that he and respondent Helen S. Dufficy are husband and wife; that they own the "San Rafael Medical Building," located in the city of San Rafael, in said county; that the County and respondents executed a written lease of four rooms and a lavatory in said building, at a rental of $120 per month, for the purpose of housing the offices of the county physician of Marin County; that commencing March 1, 1952, Dr. Dufficy occupied such leased quarters as county physician and the county paid out $3,960 in rentals therefor. The judgment prayed for is this $3,960 plus the 20 per cent penalty provided for by said section 26525.

There is no contention that the transaction is not fair in all respects. The action is based upon two theories: (1) The lease is void under the provisions of sections 1090 and 1092 of the Government Code and (2) also void in that it violates the public policy that any contract is invalid which is entered into by a public body with one of its own officers or employees, when that officer or employee has a personal interest in the

---

*Assigned by Chairman of Judicial Council.

contract and holds a position of public trust which would enable him to further that personal interest.

Section 1090 of the Government Code provides: "Members of the legislature, state, county, judicial district and city officers shall not be interested in any contract made by them in their official capacity, or by any body or board of which they are members." Section 1092 of the Government Code provides that such a contract may be avoided by any party except the officer interested therein.

The main question is whether Dr. Dufficy, as county physician, is a *county officer* within the purview of section 1090.

Article XI, section 5, of the Constitution of the State of California provides in part: "The Legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors, sheriffs, county clerks, district attorneys, and such other *county,* township, and municipal *officers* as public convenience may require, *and shall prescribe their duties and fix their terms of office.*" (Emphasis added.) Section 24000 of the Government Code enumerates who are county officers and a county physician is not included therein unless it can be said that he comes within the last subsection, "(t)," which provides for "Such other officers as are provided by law." To each of the specifically designated positions, the Legislature has prescribed the duties and fixed the terms of the respective officers. There is no contention that the Legislature has ever prescribed the duties or fixed the term of a so-called county physician. This failure to do so indicates an intention not to create the position of "county physician" as a county office. (*People* v. *Wheeler,* 136 Cal. 652, 655 [69 P. 435].)

Appellant admits that "section 203 of the Welfare and Institutions Code is the only statutory provision for the appointment of a 'County Physician.' " This section provides in part: "The board of supervisors in each county may establish and maintain a county hospital, prescribe rules for the government and management *thereof,* appoint a county physician and other necessary officers and employees *thereof,* who shall hold office during the pleasure of the board. . . ." (Emphasis added.) The word "thereof" refers in each instance to the county hospital. The term, "county physician," as used in this section means the county physician of the county hospital. He does not come into existence until the county in question establishes a county hospital. This is

also clear from a consideration of the clause, "appoint a county physician and *other* necessary officers and *employees thereof*." (Emphasis added.) To say, "employees thereof," obviously means employees of the county hospital and not of the county physician. Likewise, to say "a county physician and *other* necessary *officers and employees*," (emphasis added) necessarily classifies such county physician as an officer and employee of the county hospital and not as a public officer in the legal sense.

Section 203 of the Welfare and Institutions Code does not become operative until, in accordance with its provision, the county establishes a county hospital. ██ A court may take judicial notice of matters of common knowledge and the Superior Court in Marin County can take judicial notice that said county does not have a county hospital. (10 Cal.Jur. p. 691 et seq.) An appellate court may do the same. (10 Cal.Jur. p. 699.) Until Marin County establishes a county hospital, section 203 of the Welfare and Institutions Code does not become operative or its provisions applicable.

This does not mean that Dr. Dufficy's employment as county physician by the county is not valid. In *Valle* v. *Shaffer*, 1 Cal. App.183 [81 P. 1028], it was held that San Diego County's employment of a physician as health officer was valid by necessary implication, under the provisions of section II, article XI, of the California Constitution, which provides: "Any county, . . . may make and enforce within its limits all such local, police, *sanitary*, and other regulations as are not in conflict with general laws." (Emphasis added.) ██ In other words, Marin County has the implied power under the Constitution to employ Dr. Dufficy as its physician and did not have to await the establishment of a county hospital in order to do so. ██ The fact that he was designated by the board of supervisors as "county physician" does not mean that he was employed under the authorization of said section 203.

Even if he was or could have been employed under section 203 as "county physician," he would still not be a county officer.

*People* v. *Wheeler*, 136 Cal. 652 [69 P. 435], and *Cleland* v. *Superior Court*, 52 Cal.App.2d 530 [126 P.2d 622], both hold that a county physician is not a county officer. The Wheeler case was an action, in the nature of quo warranto, to oust Wheeler from the office described in the complaint as that of "county physician" on the ground that he was an alien, and therefore, under the provisions of section 841

of the Political Code (now Gov. Code, § 1020), disqualified to hold office. Wheeler's demurrer was sustained and judgment entered in his favor on the ground that he was not a public officer. The act (Stats. 1897, p. 458) under which he was appointed is substantially the same as the present section 201 of the Welfare and Institutions Code, neither of which mention the position of "county physician." ██ However, in holding that Wheeler was not a public officer, the following statement of the Supreme Court, at page 655, is of help in the instant case: "For with relation to county offices, it is the constitutional duty of the legislature not only to provide for the election of the officers, but also to *fix their terms of office*, to *prescribe their duties*, and to regulate their salaries or compensation; and this duty could not be delegated to the board of supervisors or others." (Emphasis ours.) (By amendment to the California Constitution in 1933, the necessity of fixing the compensation by the Legislature, except as to certain officers not involved herein, was abolished.)

In the Cleland case, *supra*, Cleland was appointed superintendent of the Mendocino County Farm and Hospital. He was indicted on charges of being interested in certain contracts as a county officer in violation of section 71 of the Penal Code (now Gov. Code, § 1097.) He sought and was granted a writ of prohibition by the District Court of Appeal restraining the superior court from proceeding to try him. The court said that the Wheeler case (*supra*) "appears to be decisive of the very issue which is determinative of this proceeding." (P. 535.) The decision pointed out that section 203 of the Welfare and Institutions Code could not apply because no such office as "superintendent" is mentioned or authorized by said section. Then, the court continues, at page 537: "*Moreover*, neither the Legislature nor the board *fixed the term* of office as required by the Constitution. . . . His *duties were not prescribed* by the Legislature. These circumstances enforce the conclusion that the Legislature did not intend, by the enactment of the two Welfare and Institutions Code sections [203 and 2400], to authorize a board of supervisors to create and appoint a superintendent of the farm and hospital as an additional county officer. On the contrary, it appears that *those statutes merely provided for additional agents and employees of the board for the management of such institutions.*" (Emphasis added.) (Section 2400 provides for almshouses and county farms and has no application to the instant case.)

The Cleland decision is direct authority that article XI, section 5, of the California Constitution is "mandatory upon the Legislature, requiring it to provide for the election or appointment in the several counties, by uniform laws, of particular county officers and to '*prescribe their duties and fix their terms of office.*' (*Welsh* v. *Bramlet,* 98 Cal. 219 [33 P. 66].) Likewise it has been held the Legislature may not delegate those powers to a board of supervisors. (*People* v. *Wheeler,* 136 Cal. 652 [69 P. 435] ; *City of Woodland* v. *Leech,* 20 Cal.App. 15, 20 [127 P. 1040].)'' (P. 535.) (Emphasis added.)

*County of Marin* v. *Messner,* 44 Cal.App.2d 577 [112 P.2d 731], involves a similar action but as appellant admits, "it was obvious that the County Surveyor [Messner] was a County officer, so no issue arose over this point."

■ We conclude that Dr. Dufficy is not a county officer within the purview of section 1090 of the Government Code.

■ Appellant states its next point as follows: "Even if the position of county physician is regarded as that of a county employee rather than a county officer, the contract here involved is void inasmuch as it violates public policy." The language of the Cleland case, *supra*, is particularly applicable to this argument. As before stated, the chief issue in that case was whether Cleland had to be an "officer" in order to be triable under section 71 of the Penal Code (now Gov. Code, § 1097). The court said, at page 534: "Our attention is directed to no law of this state, other than the two statutes above referred to [Pen. Code, § 71, and Pol. Code, § 920], which prohibits an officer, or any other person from becoming interested in such contracts. We assume no other statute exists which prohibits any class of persons other than officers from being so interested in such contracts. *Certainly neither of these statutes makes reference to employees or to any other class of persons than that of officers. If the Legislature had intended to render mere employees, as distinguished from officers, guilty of a felony for violation of those code sections, it would have been very easy to have so stated. We must assume the Legislature did not so intend.*" (Emphasis added.) (It should be kept in mind that former section 920 of the Political Code is the basis of section 1090 of the Government Code.) Thus, it is clear that, since the Legislature legislated on this subject and concerned itself only with "officers," it must have intended to exclude "employees."

What we have said thus far makes it unnecessary to discuss the question as to whether or not Dr. Dufficy, in executing the lease, was acting in his "official capacity" as is required by its express terms, in order for said section 1090 to be applicable. This point was decided adversely to the defendant in the Messner case, *supra*, the court saying, at page 590: "Nor is there any merit in defendant's contention that if there was a contract, express or implied, between him and the board of supervisors, it was made by him in his private and not in his official capacity. . . . In the present case the agreement was made with defendant solely because of his official position as county surveyor, and was carried out by him as such. It was intended that the engineering equipment which was the subject of the agreement was to be used, and it was used, in performing county work, planned and supervised by defendant in the exercise of his duties as county surveyor; and the claims for its rental were filed by him while he occupied that position." The Messner case was decided in 1941. In 1953, the Legislature added to section 1092 of the Government Code the following sentence: "No such contract [proscribed by Gov. Code, § 1090] may be avoided because of the interest of an officer therein *unless such contract is made in the official capacity. of such officer*, or by a board or body of which he is a member." (Emphasis added.) ▪ In the instant case, it is clear that Dr. Dufficy and his wife executed the lease as private citizens who owned an office building in which the county desired to lease four rooms. They were in no sense acting in an "official capacity" and the amendment of 1953 would seem to highlight the Legislature's intent not to subject such persons to the severe penalties provided in said section 1097 (five years imprisonment or $1,000 fine and life disqualification from holding any public office) for a violation of section 1090 of the Government Code. It is our opinion that the Messner case should be reconsidered in the light of the 1953 amendment mentioned above when and if the point arises in any future case.

The judgment is affirmed.

Bray, Acting P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied September 19, 1956, and appellant's petition for a hearing by the Supreme Court was denied October 17, 1956. Shenk, J., and Traynor, J., were of the opinion that the petition should be granted.