[Civ. No. 18605. First Dist., Div. One. Apr. 20, 1960.]

ALISAL SANITARY DISTRICT (a Corporation), Appellant, v. CLYDE C. KENNEDY et al., Respondents.

George F. Jansen for Appellant.

Wallace, Garrison, Norton & Ray for Respondents.

MOLINARI, J. pro tem.*—This is an appeal from a judgment in favor of the defendants following the sustaining of a demurrer to the complaint without leave to amend. Accepting the allegations of the complaint as true, the facts therein stated are as follows:

The plaintiff was a sanitary district organized pursuant to law which owned, maintained, and operated certain sewage disposal facilities in the county of Monterey. The defendants were engineers who represented and held themselves out as

*Assigned by Chairman of Judicial Council.

specialists, skilled, qualified, and experts in the design and construction of sewage treatment plants, sewers and drainage systems. During the years 1953, 1954 and 1955 and prior thereto the defendants were retained by the plaintiff for a consideration to design and supervise the construction in the county of Monterey of certain sewage treatment and disposal installations, including an outfall line which discharged sewage from plaintiff's plant in the city of Salinas into the Salinas River. In the latter half of the year 1955 the defendants recommended to plaintiff that said outfall line should be cleaned so as to increase its capacity to discharge sewage in said river and recommended the installation of additional manholes in said line to accomplish the cleaning operation. Relying upon said recommendation and the representations that defendants were specialists, skilled, qualified, and expert in the construction of sewage disposal systems, plaintiff retained defendants for a consideration to design and supervise the construction of said additional manholes in said outfall line, and defendants did, in the latter part of the year 1955, undertake to and did design and supervise the construction of 14 manholes in said line, including Manhole Number 12. The elevation of the sewage plant where the sewage entered the outfall line was 44 feet above sea level and the point of discharge of said line in the Salinas River was approximately 37 feet above sea level. The elevation above sea level of Manhole Number 12 was 43.02 feet. On December 24 and 25 of the year 1955, the elevation of the water in the Salinas River reached a point approximately 47 feet above sea level, causing sewage to back up in the outfall line and to be discharged from Manhole Number 12 to an adjacent field of celery owned by W. Ambrosini and Con Ferrasci. As a result of said discharge the field was inundated with sewage and the celery was destroyed. Ambrosini and Ferrasci filed an action in the county of Monterey against the plaintiff on the grounds of nuisance and inverse condemnation for damages for the destroyed crop of celery and recovered a judgment against plaintiff for $13,254.95. Said judgment is now final, having been affirmed by the District Court of Appeal on October 28, 1957 (154 Cal.App.2d 720 [317 P.2d 33]), a hearing having been denied by the Supreme Court. Plaintiff has paid said judgment plus accrued interest in the sum of $323.57. The defendants were negligent in the engineering and design and in supervising the construction of said manholes, including Manhole Number 12, in said outfall line, in that they knew,

or in the exercise of reasonable care should have known and anticipated, that the level of the Salinas River might and probably would exceed the level of 43.02 feet above sea level, with the consequence that sewage would be discharged from Manhole Number 12 onto adjoining property, unless said manholes were provided with sealed covers or unless the outlets thereof were constructed above the surface of the ground. The said manholes were not provided with sealed covers nor were the outlets thereof constructed above the surface of the ground. The defendants performed said engineering and design work and supervised the construction of said manholes in a careless and negligent manner, and failed to expertly, carefully, and skillfully perform said work which they had undertaken to do. The plaintiffs relied on the representations, skill and reputation of the defendants. By reason of the negligence of the defendants the plaintiff became obligated to pay the judgment and interest aforesaid and in addition paid the sum of $4,221.74 as attorney fees and costs in defending the action by Ambrosini and Ferrasci. Plaintiffs have demanded indemnity for their said damages totalling $17,800.26 from defendants who have failed and refused to pay said sum or any part thereof.

The question presented is whether or not the complaint states a cause of action for indemnity against the defendants. As heretofore noted the trial court sustained a demurrer to said complaint without leave to amend. ▮ A demurrer reaches only matters appearing on the face of the complaint and such matters as may be considered under the doctrine of judicial notice. (*Weil* v. *Barthel,* 45 Cal.2d 835 [291 P.2d 30]; *Campbell* v. *Campbell,* 157 Cal.App.2d 548 [321 P.2d 133]; *Griffith* v. *Department of Public Works,* 141 Cal.App.2d 376 [296 P.2d 838].) ▮ The allegations of the complaint must for the purposes of demurrer be accepted as true unless they are contrary to facts of which a court may take judicial notice. (*Hauger* v. *Gates,* 42 Cal.2d 752 [269 P.2d 609]; *Watson* v. *Los Altos School District,* 149 Cal.App.2d 768 [308 P.2d 872]; *Livermore* v. *Beal,* 18 Cal.App.2d 535 [64 P.2d 987].) The defendants contend not only that the complaint does not state a cause of action for indemnity on its face but that the record in the Ambrosini case of which they contend we are required to take judicial notice discloses facts at variance to those alleged in the complaint and such as to establish that as a matter of law there is no right of indemnity because

the plaintiff and defendants were joint and concurrent tort-feasors who actively participated in the acts and conduct which caused the damage to Ambrosini and Ferrasci.

In order to place the question in its proper legal focus we must briefly review the law of this state with reference to contribution between joint tortfeasors, the exceptions to that rule, and the recognition of the fundamental distinction between the right to indemnity and the right to contribution. Prior to January 1, 1958, the law in California was the common-law rule that there was no right of contribution between joint tortfeasors. (*Dow* v. *Sunset Tel. & Tel. Co.*, 162 Cal. 136 [121 P. 379]; *City & County of San Francisco* v. *Ho Sing*, 51 Cal. 2d 127 [330 P.2d 802]; *San Francisco Unified Sch. Dist.* v. *California Bldg. etc. Co.*, 162 Cal.App.2d 434 [328 P.2d 785].) The right to indemnity in certain situations in other jurisdictions was alluded to in *Peters* v. *City & County of San Francisco,* 41 Cal.2d 419 [260 P.2d 55], but the court was not called upon in that case to make a determination as to whether the right existed in this state. In 1957 the Legislature, by its enactment of section 875 of the Code of Civil Procedure, modified the common law to provide for contribution between joint tortfeasors effective as of January 1, 1958, on causes of action "accruing on or after" that date. The distinction between the right of contribution and the right of indemnity was expressly recognized by the Legislature in subdivision (f) of said section 875 which provides: "This title shall not impair any right of indemnity under existing law, and where one tortfeasor judgment debtor is entitled to indemnity from another there shall be no right of contribution between them." The existence of the right of indemnity in this state was expressly recognized in the School District and Ho Sing cases, *supra*, determined in July and October, 1958, respectively, *in* causes of action arising prior to 1958. (See also *De La Forest* v. *Yandle,* 171 Cal.App.2d 59 [340 P.2d 52].)

The alleged cause of action in the present case arose prior to 1958; therefore the common law rule against contribution applies. The question presented, however, is whether or not the plaintiff has a cause of action for indemnity. Both parties concede in their arguments that under the facts pleaded in the complaint the plaintiff and defendants were joint tortfeasors, but they disagree as to whether or not the facts come within the exceptions to the general rule of noncontribution which allow indemnity as between joint tortfeasors.

The exceptions to the general rule of noncontribution find their basis in the fundamental difference between contribution and indemnity. ██ The right of contribution, where it exists, presupposes a common liability which is shared by the joint tortfeasors on a pro rata basis. (See Code Civ. Proc., §§ 875-880.) The right of indemnity, on the other hand, because of some special relationship existing between two tortfeasors shifts the entire loss upon the one bound to indemnify. (Prosser on Torts, 2d ed., § 46, p. 249.) ██ The distinction is well stated in *Builders Supply Co.* v. *McCabe,* 366 Pa. 322, at pages 325 and 326 [77 A.2d 368], where the court said: ''The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence—a doctrine which, indeed, is not recognized by the common law; ... It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . .'' (Citing examples.) And on pages 327 and 328 the court went on to say: ''Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.''

There are numerous cases from other jurisdictions which have allowed indemnity as between joint tortfeasors upon recognized exceptions to the general rule of noncontribution, such as that the parties were not *in pari delicto* as to each other, or that the negligence of one was primary, direct, or active, while that of the other was secondary, indirect, passive or con-

structive. (See 140 A.L.R. 1306.) The California cases have
not expressly drawn these distinctions or adopted these
theories, although they have cited with approval the reason-
ing of some of these cases. (See *San Francisco Unified Sch.
Dist.* v. *California Bldg. etc. Co., supra,* 162 Cal.App.2d 434;
*City & County of San Francisco* v. *Ho Sing, supra,* 51 Cal.2d
127.) They have, however, reached the same conclusion upon
still other exceptions to the general rule which allow indemnity
upon the ground of a breach by the defendant of a duty,
either in contract or in tort, owing by him to the plaintiff or
upon equitable considerations.

In the School District case, *supra,* 162 Cal.App.2d 434, the
court, in reversing a judgment of nonsuit, held that a prima
facie case for indemnity had been made by the school district
plaintiff against the defendant maintenance company for
damages which the district was compelled to pay to an em-
ployee of the maintenance company. The employee had been
injured while washing the windows of a high school in vio-
lation of the express terms of a contract between the district
and the company as to the manner of washing the windows in
question. The contract also provided that the maintenance
company "is held responsible for payment of any and all
damages" resulting from its operations. The court said, on
page 449: "Even if this did not amount to an express contract
to indemnify the school district for damages caused to it by
a breach of the contract by the maintenance company, such a
warranty or agreement to indemnify would necessarily be
implied. Whether the school district should be precluded from
recovery by reason of its conduct, that is, *whether the conduct
of the district helped to bring about the damage* is at least a
question of fact and should have been left to the jury." (Em-
phasis added.) The court therein cited with approval the
following annotation in 140 American Law Reports, 1306. "To
these exceptions to the application of the general rule [of non-
contribution], the courts in a few cases have added another
exception to the effect that where the injury which resulted to
a third person, as to whom both of the parties were negligent
or guilty of a wrongful act, arose from a violation by the
defendant of a duty owing by him to the plaintiff, or that
where the defendant was a wrongdoer to the plaintiff but
the plaintiff was not a wrongdoer to the defendant, although
both were liable to the person injured, the plaintiff may re-
cover contribution or indemnity, as the case may be, from the

defendant notwithstanding the fact that his negligence also contributed to the third person's injury.''

In the Ho Sing case, *supra,* 51 Cal.2d 127, the plaintiff city was allowed indemnity against an abutting landowner, who had altered a portion of a public sidewalk for the benefit of his property, and where a pedestrian recovered damages against both the city and the owner because of a defective condition in the sidewalk. The court held that while both the city and the owner were joint tortfeasors and each was directly liable to the pedestrian for his own wrong, the city was entitled to be indemnified by the owner because of the special licensor-licensee relationship existing between them with respect to the use of the sidewalk for the benefit of the public. The court recognized that the general rule of noncontribution ''admits of some exceptions, and a right of indemnification may arise as a result of contract or equitable considerations.'' While the court based its decision on the long outstanding rule in other jurisdictions that a municipality has a right of action over against the landowner whose negligent act has caused the city to become liable to a member of the general public, the court recognized that where a landowner makes an unusual use of the public streets for his own benefit, with the express or implied permission of the city, such permission carries with it the implied condition that the landowner will exercise due care for the safety of the public and that it will hold the city harmless for any damages occasioned by the lack of due care. The court took note of the distinction made between the primary responsibility of the owner who created or permitted the condition and the secondary duty of the city to correct the dangerous condition of which it had notice.

In the De La Forest case, *supra,* 171 Cal.App.2d 59, the following facts were presented in a complaint to which a demurrer was sustained without leave to amend, to wit: one Mast owned a truck which required repairs to an axle. Mast engaged De La Forest, the operator of a repair shop, to make the repairs. De La Forest sublet the rebuilding and resurfacing of the axle to Temple, a welder, and Yandle, a machinist, both of whom held themselves out as qualified, skilled, and expert in their crafts. The work was negligently done causing the axle to break with the result that the truck then being driven by Mast was caused to collide with an automobile driven by one Urban causing the latter's death. Both De La Forest and Mast had installed the axle without first inspecting

it. The Urban heirs sued Mast and De La Forest who demanded indemnity from Temple and Yandle. The latter refused with the result that the former were caused to settle and compromise the Urban action. The court held that the foregoing facts alleged a cause of action for indemnity by Mast and De La Forest against Yandle and Temple, relying on the School District case, *supra,* and the rule therein announced, that where the injury to a third party arises from a violation of a contractual duty owed by one tortfeasor to the other, the latter may recover from the former. The court quoted the following language from the School District case: ''In all cases where one party creates the condition which causes the injury, and the other does not join therein, but is exposed to liability, and suffers damage on account of it, the rule that one of two joint tort-feasors cannot maintain an action against the other for indemnity does not apply.'' This statement was taken by the School District case from *Busch & Latta Paint Co.* v. *Woermann Const. Co.,* 310 Mo. 419 [276 S.W. 614], where a painting contractor was held to be entitled to indemnity from a scaffold company for damages which the contractor paid to an employee who fell from a defective scaffold which the contractor failed to inspect.

The following language from the School District case, on page 446, is pertinent: ''The United States Supreme Court has recently met this problem. It allowed the third person to recover from an employer where the employer, as in the instant case, breached its contract with the third person and an employee was injured. There was no express contract of indemnification between the third person and the employer. The case is *Weyerhaeuser Steamship Co.* v. *Nacirema Operating Co.,* 355 U.S. 563 [78 S.Ct. 438, 2 L.Ed.2d 491]. . . . In that case a stevedoring firm contracted to furnish the shipowner stevedoring services. In an action by the longshoreman against the shipowner the latter was found to be negligent and damages awarded. The shipowner paid the damages and sought indemnity from the stevedoring company. That is precisely the problem here presented. The court . . . held that the shipowner was entitled to indemnity. The reasoning of the court was that the stevedoring company had contracted with the shipowner to furnish stevedoring services; that such a contract necessarily implied an obligation to perform the work involved with reasonable safety and to discharge forseeable damages resulting to the shipowner from the contractor's improper performance. Thus the court found an im-

plied agreement to indemnify. It reasoned that the contractor breached its contract with the shipowner; that such breach foreseeably led to damages being recovered from the shipowner; that under such circumstances the shipowner "was entitled to indemnity absent conduct on its part sufficient to preclude recovery'; that whether the shipowner's negligence was sufficient to preclude recovery was a jury question." (See also *Ryan Stevedoring Co.* v. *Pan Atlantic S.S. Corp.*, 350 U.S. 124 [76 S.Ct. 232, 100 L.Ed. 133].)

The Ho Sing, School District, and De La Forest cases, *supra*, recognize the rule announced in *Peters* v. *City & County of San Francisco, supra*, 41 Cal.2d 419, to the effect that each of two joint or concurrent tortfeasors may be held directly liable for his wrong to an injured person, and that each may be held liable for the entire damage suffered. These cases do hold, however, that, as between themselves, the liability may be shifted to the tortfeasor who has breached a duty which he owes to the other where the injury which resulted to the third person arose from a violation or breach of that duty.

Applying the rules announced in the foregoing cases to the facts alleged in the complaint in the present case we must conclude that a cause of action is stated. The complaint alleges in substance that the plaintiff engaged the defendants to do engineering work; that the defendants represented themselves to be specialists, skilled and expert in the work they were engaged to do; that plaintiff relied on these representations; that the work was negligently done; and that such negligence caused the injury to Ambrosini and Ferrasci for which the plaintiff was obliged to pay damages upon a liability grounded in nuisance and inverse condemnation. The essence of the complaint is that the defendants created the condition which caused the injury. There is nothing on the face of the complaint to indicate that the plaintiff did in fact participate in the alleged omission which caused the injury. The gist of the complaint is the defendants' breach of its obligation to perform the engineering work in the skillful, expert, and careful manner they had represented they were capable of doing and the plaintiff's reliance on defendants' judgment and knowledge in matters in which the latter were experts. Such an obligation carries with it an implied agreement to indemnify and to discharge forseeable damages resulting to the plaintiff from the defendants' negligent performance. The nature and scope of the relationship between the plaintiff and the defendants; the obligations owing by one to

the other; the extent of the participation of the plaintiff in the affirmative acts of negligence; the physical connection of the plaintiff, if any, with the defendants' acts of negligence by knowledge or acquiescence; or the failure of the plaintiff to perform some duty it may have undertaken by virtue of its agreement—are all questions of fact that should be left to the jury.

We are asked by the defendants, however, to go beyond the face of the complaint and to take judicial notice of the record in *Ambrosini* v. *Alisal Sanitary Dist.*, 154 Cal.App. 2d 720 [317 P.2d 33]. It is apparently defendants' contention that such record will disclose facts which will render the complaint fatally defective in that it will demonstrate that as a matter of law the plaintiff was adjudicated to have been actively negligent so as to preclude indemnity in the present action. The basis for this contention appears to be that the determination in Ambrosini is res judicata in the present proceeding.

We are not only confronted with the rule that res judicata may not be raised by demurrer (*King* v. *Mortimer*, 83 Cal.App.2d 153 [188 P.2d 502]; *Collins* v. *City & County of San Francisco*, 112 Cal.App.2d 719 [247 P.2d 362]), but by the rule that normally a court will not in one case take judicial notice of the records or judgment in another case even though the action was in the same court. (*Wolfsen* v. *Hathaway*, 32 Cal.2d 632 [198 P.2d 1]; *Johnston* v. *Ota*, 43 Cal.App. 2d 94 [110 P.2d 507]; *Popcorn Equipment Co.* v. *Page*, 92 Cal.App.2d 448 [207 P.2d 647].) The latter rule is not without exception. In *Watson* v. *Los Altos School District, supra*, 149 Cal.App.2d 768, the court took judicial notice of related prior proceedings to demonstrate that a complaint was a sham and contained false allegations thus making it demurrable, even though the court was compelled to assume that the prior determination was not res judicata because such defense could not be raised by demurrer. The rule precluding a court from taking judicial notice of its judgment in another case is not an inflexible one. As said in the Watson case, *supra*, it is a rule of expediency, to be applied or refused application as the justice of the case requires. The exception to the rule, however, has usually been applied in unusual circumstances to avoid unreasonable hardship or where the practical and efficient administration of the law requires it. (*Watson* v. *Los Altos School District, supra*, 149 Cal.App.2d 768; *City of Los Angeles* v. *Abbott*, 217 Cal. 184 [17 P.2d 993]; *Sewell* v. *John-*

*son,* 165 Cal. 762 [134 P. 704, Ann.Cas. 1915B 645] ; *Estate of McSweeney,* 107 Cal.App.2d 140 [236 P.2d 846] ; *Estate of Pailhe,* 114 Cal.App.2d 658 [251 P.2d 76].) The question here is whether we should take judicial notice, and if we did, would it render the complaint vulnerable to the demurrer? Defendants argue that we must take judicial notice because reference was made to the Ambrosini case in the complaint. Plaintiff contends we ought not because the reference was merely a necessary recital as a predicate for a cause of action for indemnity. This is not determinative of the question. If we are required to take judicial cognizance of the Ambrosini judgment and record, they have been appropriately brought to the attention of the court in defendants' brief irrespective of the reference in the complaint. (See *Popcorn Equipment Co.* v. *Page, supra,* 92 Cal.App.2d 448.) ▮ An appellate court has the same power to take judicial notice as a trial court. The court of review is bound by the same standard of judicial notice. If the matters in dispute are matters of judicial cognizance, this court will assume that the court below did take such notice in arriving at its findings. (*Standley* v. *Knapp,* 113 Cal.App. 91 [298 P. 109] ; *People* v. *Tossetti,* 107 Cal.App. 7 [289 P. 881] ; *County of Marin* v. *Dufficy,* 144 Cal. App.2d 30 [300 P.2d 721] ; *People* v. *Stralla,* 14 Cal.2d 617 [96 P.2d 941].) ▮ No good reason has, however, been advanced by the defendants as to why the exception should be invoked in this case. There is no showing of unusual circumstances or unreasonable hardship ; nor is there any suggestion that plaintiff is flouting the principle of truthful pleading in that it is attempting to by-pass a demurrer by suppressing or contradicting facts which a court will judicially notice. There is nothing in the opinion rendered in *Ambrosini* or the argument of defendants suggesting that the record in that case would disclose a finding that the plaintiff was careless and negligent that would compel us to judicially notice that plaintiff was so actively negligent as to preclude any recovery by way of indemnity. The Ambrosini case was tried on causes of action predicated upon the creation and maintenance of a nuisance and the liability imposed by the Constitution of our state by way of inverse condemnation. The defendants were not parties in *Ambrosini,* nor were the issues decided there identical with those presented here. The issue as to whether the injury to Ambrosini and Ferrasci arose from a violation of a contractual duty owed by the defendants in the present case to the plaintiff here was not before the court.

 The contention is also urged that the plaintiff is barred from recovery because the liability imposed by way of inverse condemnation cannot be shifted by a public agency to a contractor. Such a position ignores the fact that the judgment rendered in *Ambrosini* was allegedly rendered also on a cause of action for nuisance. Defendants rely on the rule applicable to inverse condemnation cases to the effect that where a public agency contracts for the doing of construction work according to plans and specifications, theretofore adopted, and the contractor performs the work with proper care and skill and in accordance with the plans and specifications, but the work thus planned and specified results in an injury to adjacent property, the liability, if any there is, for the payment of damages, is upon the public agency under its obligation to compensate the damages resulting from the exercise of its governmental power. (*Steiger* v. *City of San Diego*, 163 Cal.App.2d 110 [329 P.2d 94]; *Marin Mun. W. Dist.* v. *Peninsula P. Co.*, 34 Cal.App.2d 647 [94 P.2d 404]; *Northwestern Pac. R.R. Co.* v. *Currie*, 100 Cal.App. 173 [279 P. 1057].) This rule, however, has an exception to the effect that where the contractor departs from the contract, plans or specifications, or goes beyond them, or performs the work planned and specified in an improper, careless or negligent manner, which results in injury to adjacent property, then he is responsible for the tort he has committed. (*Marin Mun. W. Dist.* v. *Peninsula P. Co., supra*, 34 Cal.App.2d 647.) Under this latter exception the third party has a cause of action against the contractor. He may, as was the case in *Ambrosini*, have a cause of action against the public agency. In such a situation the contractor and the public agency are joint or concurrent tortfeasors; and each, under the holding of the Peters case, is directly liable for his own wrong and each may be held liable for the damage suffered. Ambrosini and Ferrasci elected to hold the plaintiff here liable for the entire damage suffered. Such election does not preclude the public agency, however, from seeking indemnity against the contractor where a right of indemnification arises under the rule announced in authorities above cited.

The judgment is reversed.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied May 13, 1960.